The next matter, number 25-1506, MW Gestion v. 1Globe Capital LLC et al. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good afternoon, Your Honors. This is Michael Grunfeld from Pomerantz. On behalf of Plaintiff Appellant MW Gestion, I'd like to reserve three minutes for rebuttal, please. You may. This case arises out of a battle for control of Sinovac in which defendant 1Globe blatantly violated its disclosure duties under Section 13D of the Exchange Act, resulting in a protracted dispute with Sinovac that led to trading in the company's stock being halted on the Nasdaq Stock Exchange since 2019. The District Court has already ruled in plaintiff's favor that defendant's wrongful conduct caused the trading halt. Despite the complex history of this case and 1Globe's separate dispute with Sinovac and its clear misconduct, all that is at issue in this appeal is whether a plaintiff unduly delayed in seeking to amend the complaint in response to the Privy Council's January 2025 decision overturning two prior decisions by courts in Antigua, and also whether plaintiff's Securities Fraud claims are timely. On the issue of whether plaintiff unduly delayed, leave to amend under Rule 15A2 of the Federal Rules of Civil Procedure should be freely given so that plaintiff's claims may be heard on the merits. Here, plaintiff promptly sought to amend the complaint immediately after the Privy Council's January 2025 decision that made plaintiff's prior tortious interference with contract claim moot. The District Court abused its discretion in holding that that constituted undue delay. The First Circuit in Amendus Pharmaceuticals held that plaintiffs do not unduly delay when they seek leave to amend after becoming aware of a need to amend based on new information that substantially alters the substance or viability of the claims. Amendus talks about becoming aware of the need to amend or new information. And as I understood the District Court, I think there the District Court found, you know, this contract claim was always an issue in the Antigua litigation. And if you look at the motion to stay hearing, it's clear that the parties acknowledge that the contract claim there is at issue. Why was that an abuse of discretion for the District Court to sort of say, you know, you knew from years prior that the contract could have been at issue, the courts could have found one way or the other. If you wanted to amend your claim, you should have done it then. Because at that point in time, before the Privy Council decision, two courts in Antigua had already held that the rights agreement, the contracted issue, was valid. And so the mere possibility that the law might change is not sufficient under Amendus to make… We also said that the plaintiffs there believed in the subjective strength of their case was not enough to prevent them from having to amend when there was a motion to dismiss pending because they had all the facts. What's the difference? So the key distinction is that in Amendus, this court explained that when the motion to dismiss is granted on non-obvious grounds, that's when it's considered new information. And other cases also hold that a change in the legal landscape stemming from a decision by a different court constitutes new information that warrants leave to amend. This case is actually stronger than Amendus because the new information came not from the District Court's ruling on a motion for leave. How's it different than Cater? In Cater, it was a more straightforward motion to dismiss that would have not been considered non-obvious under the Amendus standard. That seems like a weird distinction. I mean, it's risk, right? So in Cater, there's risk. Apparently, these people thought they were in good position, so they didn't need to do anything. So they didn't. Then, oh, we were wrong. We lost. And then the court says, too bad. You had all this time, and you knew all the information. So I understand why your client was confident in the two Antigua rulings. I follow all of that. But I guess I'm wondering why Cater isn't suggesting that's not a good enough answer. Well, those two Antigua rulings are a key important distinction. That's very different than a pending motion to dismiss in the present case. So what's the difference between subjective belief in the strength of the First Amendment complaint, which that's a quote from Cater, versus yours was more than subjective because you had two lower court rulings in your favor? That's right, and that's what Amendus meant by the ruling being not obvious. And another key distinction also is that all of these cases, including the ones that the district court and defendants rely on, dealt with cases where a motion to dismiss against the plaintiff was granted. Here, in fact, the motion to dismiss was denied. Because Amendus also has a focus on what you said, but also that new information was obtained and acted on relatively quickly, and you don't really have that part. Right? Well, Amendus did reference new information, but it made very clear that that was not the basis of its ruling. In fact, it rejected the district court's reasoning that the allegations in the proposed amended complaint were not new. That was what the district court said, and Amendus rejected that as a basis for denial of leave to amend. Other cases also agree that merely the fact that information was previously available is not a sufficient basis for denying leave to amend, particularly in a complex situation like this. One case, the Cabrera case, calls it an unusual procedural posture where an unexpected decision from another case comes out. Aside from the unexpected Privy Council decision, was there any new information? Well, the proposed second amended complaint does contain a lot of allegations that explain in detail what resulted from the Privy Council decision, including the Privy Council's upholding that OneGlobe conducted an ambush at the annual meeting. But that's the extent of the new information. But looking to whether there's new information is really the wrong legal standard based on Amendus and also the other cases that we cite in the briefing. In fact, if you look at cases that are actually in the procedural posture here of a motion to dismiss having been denied against the defendants and the plaintiff's claims being sustained, the key issue really is whether the defendants are prejudiced at all by adding to the discovery schedule. And there's a plethora of cases that deal with that issue and consistently hold that where there's no addition or change to the discovery schedule or the case schedule, there's no prejudice. But you agree that long delays we've held don't require an additional showing of prejudice, right? Well, the question is, at what point is the length measured from? Right, that is the point. Right. You gave the response, but you agree with me that there are cases where prejudice does not need to be shown to affirm a denial. Those are generally cases where the basis to amend is solely based on the fact that the district court granted a motion to dismiss, where the case is in this procedural posture. But if you take this case as, and I know you're not going to like this assumption, but I'm just making it. Wait and see is not okay. You engaged in wait and see. The wait and see went on for years because the Privy Council thing dragged on while this case was stayed, and then you moved to amend when the Privy Council was over in violation of the wait and see idea, then it would not be an abuse of discretion, if that's all correct, for the judge to deny the motion to amend without an additional showing of prejudice. Is that correct? Well, I would not agree that length measured just purely in terms of how long the case is going on is a proper basis. Right. I added in that there's a wait and see notion that applies here, and you waited and saw in a way that the case law doesn't permit. You have to take that assumption. If that assumption is right and the length of the delay ends up being multiple years, then that could, if that's all true, which I'm not saying it is, would then be a basis to deny the motion to amend. I would agree that if this was considered a wait and see situation, that would be true. But there are really two separate factors. One is whether the basis for seeking an amendment was obvious. And the second factor that is considered is the length. Counsel, just to focus on that first factor, I mean, as I understand it, the standard is essentially if it's a legal theory that you could have advanced earlier, you should have. And I'm just wondering why that isn't the case here, because, again, you knew these other legal theories were available. You knew whether this contract was going to be deemed valid, was in dispute in the litigation, and you made a strategic choice to just bring the breach contract claim and not the alternative claims. The theories were available. The facts were known that the contract could be deemed invalid. So why isn't this a wait and see case? Well, Amendus specifically rejected the idea that there is a requirement to plead in the alternative. Amendus referenced either the defendants or the district court faulting the plaintiff for not seeking amendment during the motion to dismiss process even as an alternative, and the court held that that was not a valid basis for denying leave to amend. And other cases also hold that the fact that information was available previously, even years previously, is not a valid basis for denying leave to amend. And if the facts were available previously, it goes without saying that the alternative theory was also available previously. In fact, in the Cabrera case and the Weinreich cases, which are district court cases, the courts held that even though the cases had been going on either for four years or that there was, quote, considerable delay, that wasn't a basis for denying leave to amend when there was a change in the legal landscape. But why is this a change in the legal landscape? You've used that phrase before. To me, it's a factual change. The question was, is this particular agreement going to be deemed valid or not? And at the end of the day, factually, it was decided by a court that it wasn't valid. It's not a change in the legal landscape. It's just a factual question. Will it be valid or won't it? Well, it's a question that involved a question of Antigua law, whether the agreement was valid under Antigua law. I understand that. But it's not that the legal landscape changed. It's just whether the agreement was enforceable change. That's a factual matter. In other words, when we usually talk about the legal landscape changing, there's a real change in the law. A legal claim is now viewed as you have to have these elements to bring it, or you can bring a legal claim that you couldn't bring before. To me, that doesn't seem to be what happened here. There was litigation that you knew about from the beginning contesting the validity of this critical agreement, and as it turned out, the litigation concluded and the court held that it was not valid. So I'm having trouble understanding how that's a change in the legal landscape. Well, when the courts talk about the new information. It's not a change in the law, right? I would say it's a change in the application of Antigua law to the rights agreement at issue in this case. And the cases that we cite in our favor talk about the plaintiffs advancing new theories of liability. They don't talk about the plaintiff adapting the current theory to the change. They permit plaintiffs to advance new legal theories in response to the unexpected information. I'll save the remaining points for rebuttal unless your honors have other questions. No, thank you. Would counsel for the apologies please introduce himself on the record to begin? Good afternoon. Mike Bongiorno from Willward Hale along with Erica Schutzman and Tim Perla on behalf of the defendant appellees. I'd like to respond to a few of the things that Mr. Grunfeld said in response to the court's questions. First of all, he did not file or seek to file an amended complaint immediately after the Privy Council ruling. That is not what happened. We filed a status report with Judge Gordon after the Privy Council ruling came out. And we said, here it is. Here's what we've been waiting for for over a year. Came out in our favor. We assume they're going to drop it. If they don't, we will file a motion for judgment on the pleadings. And nothing happened for a while. We were waiting for Mr. Grunfeld. What do you mean by a while? What's that? What's a while? A few weeks. We were waiting for Mr. Grunfeld to send over a voluntary dismissal of his remaining claims, so he could come to the First Circuit and appeal the dismissal of the Exchange Act claims. And instead, we didn't get anything from him. So Judge Gordon, understandably impatient that the case had been sitting for a while, called us into this courthouse for a status conference. And we came in here, and he looked at us like, what's going on? Understandably, because we had been waiting for this ruling, as Judge Rickman said, to decide whether or not the poison pill was valid. And it was invalid. So what are we doing? And Mr. Grunfeld got up and shocked the judge and said, oh, I'm going to amend. And so it was not immediate. It was six, seven, eight weeks later. It wasn't 28 days that the Amandus v. Zeeland case was. And it also, very importantly, which didn't get mentioned in his lengthy discussion of that First Circuit decision, in that case, the court said, this is the First Amendment. If it were not, we might look at it a little differently. That's what the First Circuit said. In this case, this is not the First Amendment. This is an attempt to amend again. The case was filed in August of 2022. It was amended October, November, December of 2022. It was obviously briefing on a motion to dismiss. Judge Gordon made a ruling. Then we moved to stay because of what was left of the case, obviously, could get killed off by the Privy Council. And so this isn't a first attempt to amend. It's a second attempt to amend. I guess that's all well and good. But it really seems the heart of this is the question of, I understand, six weeks. But in the great scheme of this, that's not really that much time. What is, I think, the legal question at the heart of this is the question of, you know, can they rely on this notion of sort of surprise? Like, we are watching this Antigua thing closely. We're winning, or the side we want has won and won again. And we can sort of rest on that without acting further because two courts have found a certain way. I don't know what the statistics of the Privy Council versus the Antigua court are, but I have a sense that in this court, the appeals court goes with the district court somewhere between 80% and 90% of the time. So, you know, do those ideas play into this that they were surprised? And so when you're surprised, you should get a chance. Well, I don't know if they were surprised or not. They were certainly disappointed. I don't think you get a second chance just because you misjudged what might happen in another court, which is what happened here. Amendus talks, I mean, sort of related to this question about the realigning of previously articulated facts and that that is a legitimate basis for amendment. Why isn't the Privy Council decision that? Oh, I understand, Your Honor, but I don't think so. I'm terrible at pronouncing that case, so I always say Zealand instead, which was the defendant. In Amendus, that was almost like a motion for a more definite statement type of ruling, right? Like the plaintiff didn't distinguish very well between a foreign corporation and a U.S. corporation in the pleading. And the court said, and by the way, that was a minute order in that case at the district court level. It was not the analysis and hearing and everything that we had here. And the court said, you know, they can amend and sort of fix, try to distinguish between the two companies here. And importantly, and that question got shrugged off pretty well, but there was new information in that amendment. There is no new information here. The question was asked very directly, was there new information? The answer in this case, that was asked. The actual answer to that question is no, none, nothing whatsoever. There was no new information. What would have happened here if he? How long was this thing stayed? This thing was stayed from December of 2023 until March, well, January or March of 2025, depending on whether you count the stay. Let's say at the time when you're asking for a stay, they say, okay, and we're also now going to assert our business interference claim at that time. What would have happened? Because those claims seem to mostly overlap, not entirely overlap. It would be weird, I think, or I guess I'm asking, would it be weird to think we're going to litigate this business interference claim while the interference with contract claim is still out there? I'm sorry, Your Honor, no, I don't think it would be weird at all. We talked about pleading in the alternative, and actually when this got brought up, the potential amendment got up in front of Judge Gorton. I said, you know, I was immediately reminded of civil procedure, and you can say, you know, it wasn't my pot, it was your pot, it was broken, and it wasn't broken, all that alternative stuff. Here, they're not really, this isn't really pleading in the alternative. You can plead interference with contract and interference with economic business relations and interference with future economic relations as not inconsistent but as consistent with one another. But I guess as I tried to think about this complicated business situation, it struck me that the damages causation point might be easier to demonstrate on the contract claim and maybe harder on the business relations claim, but the underlying conduct of whether someone did something wrong was the same. So what should a judge do there? And I guess I'm just wondering because, you know, if we're going to kick them out of court, in my mind, there should be some reason for it. And if the bottom line would have been everything would have just remained the same anyway, I feel like, you know, is this formality over justice? I understand, Your Honor, and it's not formality. The underlying facts are the underlying facts. The discovery would have been the same. The discovery could have commenced as soon as they amended. They would have had to move to amend because they had already amended and there had already been a ruling on a motion to dismiss. And when we moved to stay, they could have moved to amend and said, no need for a stay, no need to wait for the Privy Council. We have what's called behind door number two. We have this other claim that we can bring. Counsel, is that sort of the practical difference then that if they had brought because really it's just additional claims. They didn't need any additional facts. As you've said, they could just have pled additional claims, and if they had pled them at that time, the case actually would have proceeded for that year and a half.  And that's what you think is sort of the practical real world impact on your client from the wait and see and on the court from having a case sort of grow stale when it didn't need to.  And just to go back to your question, Your Honor, which you've informed of, the issue of how are the damages going to play out someday depending on the Privy Council ruling is something we live with every day, my firm and his firm, in these securities cases. Because you don't know the day the complaint is filed what the damages necessarily are going to be. That gets played out over years with experts and analysis of markets and trading, et cetera. And here, it could not be more clear that the issue of what the damages are was up in the air because there was a trading call that exists to this day, to this day. So how much, of course our position is there was no damage whatsoever, but putting that aside, how much their claim of damages would be is something that was unclear when they filed the complaint and would continue to be unclear, as Your Honor suggested, as that Privy Council ruling developed as to whether or not is it an interference with contract, is it an interference with advantageous relations, but the case absolutely could and should have gone forward two and a half years ago. But they sat on this, they wait, they waited. I don't know if they thought of this claim back then. I think this is more a situation like the Wilmington Trust case, the second one, the nicotine one, there were two that were kind of back to back, where in the second case, they pivoted and the court, which always uses better language than I could ever think of, said that a court could reasonably have concluded that the plaintiff was scrambling to devise new theories of liability based on the same facts as the original case that could have or should have been put forward in a more timeless fashion. I hope I pronounced timeless right. I'm not too familiar with that word. But that's what happened here. In the Wilmington Trust case, there was the Calderon one and then the nicotine one. In the Calderon one, there was some ruling that the plaintiff hadn't expected, and so in the second case they filed, they said, let me change my theory. Let me pivot. Same facts, new theory. And the court said, no, you're scrambling. That's what happened here. And I just want to mention, this is an abuse of discretion case. This is not de novo review. I know the court is well aware of that. But this is a case that Judge Gordon lived with for two and a half years and was very familiar with the cadence of the case and how the parties were proceeding, his rulings, his decision to stay, which was hotly contested, and then his frustration in managing his docket with the notion that the plaintiff would not, at the time that we sought the stay, say, wait a second, no need for a stay. I've got another claim I can bring that won't be dependent on that. So it would be, I think, very unusual given the rulings. Advest, Wilmington Trust, the second Wilmington Trust, Sarepta, Biogen, Fresenius, Palmer v. Champion. All of those cases I just mentioned are First Circuit cases affirming the denial of a motion for leave to amend. He has one case I think I've explained why I think it is easily distinguishable. First request to amend, new information, et cetera, and a minute order that the court said, you know, this was just realigning some allegations against the two parties. This is a claim that was either in his back pocket or he hadn't even thought of it that he tried to pivot to, understandably, once he found out the Privy Council surprised him. But waiting and seeing is not something that this court countenances, and that's why you see this avalanche of cases affirming the discretion of the district court judge to deny a motion for leave to amend when the district court judge believes that's appropriate. Thank you. Thank you, counsel. At this time would counsel for the appellant please reintroduce himself on the record. He has a three-minute rebuttal. Thank you. Michael Grunfeld for the appellant. A few things I would like to point out in response. Firstly, as we point out in our briefing, One Globe itself delayed substantially in the Privy Council proceeding. Had One Globe not delayed in all the ways we point out, the Privy Council decision easily could have come out a year earlier, which would have made this whole delay issue moot. Secondly, the idea that had we sought to amend at the time that the case was stayed in December 2023, defendants would have just said, Okay, let's go ahead with discovery in that claim while the tortious interference with contract claim is stayed is laughable. They would have sought to have the whole case stayed because it wouldn't have made sense to proceed with discovery on one claim while another claim was stayed. I'd also note that despite the fact that this proposed amendment is a second amended complaint, there's only been one ruling on the merits. We amended the complaint right away at the outset, and then there was only one motion to dismiss with a ruling on the merits that went in plaintiff's favor. I also just wanted to respond to Judge Rickleman's point about whether the Privy Council's decision was legal versus factual. I continue to think that it was legal in the sense that it was an interpretation of Antigua law about what's needed to insert a poison pill, but that's also not the key distinction. In Amendus, the analysis didn't turn on whether the ruling was legal or factual. The question is just whether the plaintiff becomes aware that its prior claim is not viable. I also wanted to note on the abuse of discretion point that the cases clearly hold that despite that standard, when the district judge makes a legal error or its reasoning doesn't pass muster, then denying leave to amend is improper. That was the case here. In fact, at the hearing where we brought up the wanting to seek amendment merely a matter of weeks after the Privy Council decision, Judge Gorton noted that he doesn't like having cases on his docket for three years, but that's not a relevant factor in the case law, how long the case has been going on for. I just briefly want to get to the separate Exchange Act claims and note that plaintiff couldn't have known with enough specificity its damages from the change in share price while trading was halted in Sinovac stock, which actually remains halted to this day, and even separate from when it technically discovered its claims as a matter of equitable estoppel, the statute of limitations should be told for the mere three months between when it was two years from the SEC order in May 2022 to when this action was initiated in August 2022. Unless your honors have any other questions. Thank you. Thank you very much. That concludes argument in this case.